IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOHN SAM, JR., and ALL ABOUT :
LEARNING AFTER SCHOOL, INC., :
                              :
    Plaintiffs,               :
                              :   CIVIL ACTION NO.
    v.                        :   1:03-CV-3178-JOF
                              :
LORRAINE B. REICH and         :
ATLANTA INDEPENDENT           :
SCHOOL SYSTEM,                :
                              :
    Defendants.               :

## OPINION AND ORDER

This matter is before the court on Plaintiffs' motion to disqualify attorney Dorsey Hopson [58-1]; Defendants' motion for a protective order [85-1]; Defendants' motion for summary judgment [90-1]; Plaintiffs' motion to compel deposition of Kathy Augustine [113-1]; Plaintiffs' motion to stay consideration of Defendants' motion for summary judgment [118-1]; and Plaintiffs' motion for leave to file supplemental brief [122-1].

**I.   Background and Procedural History**

Plaintiffs, John Sam, Jr., and All About Learning After School, Inc. ("AALAS"), filed suit pursuant to 42 U.S.C. § 1983, on October 17, 2003, against Defendants, Lorraine B. Reich and the Atlanta Independent School System ("APS"), alleging that Defendants violated

their First Amendment rights and due process under the United States Constitution. Plaintiffs also raise claims of breach of contract and tortious interference with a contractual relationship. During the relevant time period, Plaintiff Sam worked as an elementary school teacher at Warren T. Jackson Elementary School. He operated AALAS to provide after school services at Jackson Elementary. Defendant Lorraine Reich is the principal at the school.

The court previously discussed facts relevant to Plaintiffs' suit in an order granting in part and denying in part Defendants' motion to dismiss. *See* Order, dated September 28, 2004, and Order on Motion for Reconsideration, dated March 24, 2005. Specifically, out of those orders, the court held that Plaintiff Sam could not establish that he engaged in speech that was a matter of public concern, and therefore his First Amendment claim failed. The court also ruled that he could not establish a due process violation because he had not exhausted Defendant Atlanta Public School's grievance process or remedies provided under state law. The court allowed Plaintiffs' complaint to proceed on the basis of (1) breach of employment contract against APS, (2) breach of AALAS contract against APS, and (3) tortious interference with contractual relations against Dr. Reich. It is important to emphasize again that the court has already dismissed Plaintiffs' retaliation claim. A great deal of Plaintiffs' arguments with respect to the instant motion for summary judgment and requests for additional discovery relate to the previously-dismissed retaliation claim and, therefore, are not relevant to Plaintiffs' remaining state law contract and tort claims.

**II.    Discussion**

2

### A.   Motion for Summary Judgment

The parties have filed numerous discovery motions related to whether Dorsey Hopson, counsel for Atlanta Public Schools, and Kathy Augustine, Deputy Superintendent of the Atlanta Public Schools, are necessary fact witnesses. The court first reviews Defendants' motion for summary judgment to determine whether testimony from these two individuals is relevant to Plaintiffs' remaining claims.

### 1.   Facts

The court need not review the poor relationship between Dr. Reich and Plaintiff Sam in detail because it is not relevant to Plaintiffs' contract-related claims. Suffice it to say that in the fall of 2001, Plaintiff Sam and Dr. Reich began having disagreements with respect to Plaintiff's teaching responsibilities, such as Plaintiff Sam's allowing elementary school students to watch the events of September 11, 2001 live on television against Dr. Reich's direction and failing to attend an October 12, 2001 convocation with the APS Superintendent. Plaintiff Sam, of course, views the relationship between him and Dr. Reich as having begun to deteriorate when he raised concerns about the management of the school and filed a grievance against Dr. Reich on October 16, 2001.

Dr. Reich denied Plaintiff Sam's grievance, and the problems continued with respect to Plaintiff Sam failing to abide by the lunch schedule, allegedly reporting to Dr. Reich a false reason for requiring a substitute teacher, and a strained meeting between Dr. Reich and Plaintiff Sam on November 26, 2001. After the November 26, 2001 meeting, Dr. Reich

3

placed Plaintiff Sam on a Professional Development Plan to address these issues. Plaintiff Sam responded that Dr. Reich was requiring him to submit lesson plans in a confusing manner that was not consistent with "policy" at the school. The two had meetings about the lesson plans on November 27, 2001, and Dr. Reich attempted to have another meeting on November 29, 2001. She sent Plaintiff Sam a letter on December 3, 2001, concerning his refusal to produce lesson plans. In his 23-page affidavit submitted in opposition to Defendants' motion for summary judgment, Plaintiff Sam testified that Dr. Reich was a hostile and abusive supervisor and spent the fall of 2001 and into 2002 building a false record against him. *See* Sam Aff., ¶¶ 24-40.

On December 22, 2001, Dr. Reich recommended to Dr. Dorthea Dancy, her supervisor and Executive Director of APS, that Plaintiff Sam be transferred to another school due to Dr. Reich's belief he was insubordinate. Dr. Dancy decided to transfer Plaintiff Sam to A.D. Williams Elementary School. The conditions there, he testified, were far inferior to his working conditions at Jackson Elementary School. In his amended complaint, Plaintiff Sam averred that he was assigned to assist a teacher at A.D. Williams instead of being given his own classroom, the students at Williams do not have the privileges that those at Jackson have and most were below grade level, the air conditioning did not work at Williams, there were no windows at Williams, student behavior was more problematic at Williams, and teachers were permitted to use physical force when dealing with misbehaving students, there was no cultural or racial diversity at Williams, there was no enrichment material available, and Jackson

4

provided a dome on its outdoor playground to protect students during inclement weather and Williams did not. Plaintiff Sam testified that the transfer was a "de facto demotion and punishment." *See* Sam Aff., ¶¶ 62, 64. In March 2002, Plaintiff Sam resigned from his position at A.D. Williams.

In December 1997, Plaintiff Sam created a nonprofit corporation, All About Learning After School ("AALAS"), to provide after-school educational programs for elementary school-aged children. Plaintiff Sam approached Dr. Reich about providing such services to Jackson Elementary School. As principal at Jackson Elementary School, Dr. Reich's approval was required for such a program, and her signature is on the contract signed by AALAS and APS in August 1998. *See* Reich Aff., Exh. 1 & 2, AALAS Contract, at 5 (signed by Lorraine Reich over line designated, "Recommended by Principal"). The contract was then submitted to APS' Department of School Choice and Governance for final approval. The AALAS contract contains a termination provision which allows either party to terminate the contract for any reason with thirty days' notice. *See id.*, ¶ 5 ("This contract may be terminated, for any reason whatsoever, by the BOARD or the CONTRACTOR upon thirty (30) days written notice to the other party.").

Once Plaintiff Sam was transferred to a different elementary school, AALAS continued to provide after school services to Jackson Elementary School through a colleague of Plaintiff Sam's, Colleen McCarthy. Ms. McCarthy, however, was also transferred from Jackson Elementary School during the 2001-2002 school year. As a result, Dr. Reich

5

determined that it was not productive to have AALAS continue to operate at Jackson Elementary School, and she requested that APS terminate its contract with AALAS.  On January 14, 2002, APS sent a letter to Plaintiff Sam notifying him that the AALAS contract would be terminated as of February 15, 2002.

### 2. Contentions

Defendants contend that Plaintiff Sam's breach of employment contract is without merit because his transfer was made pursuant to his contract, and he did not suffer a reduction in pay or a loss in benefits as a result of the transfer.  Defendants next argue that under the terms of the AALAS contract, either party could terminate the contract for any reason with thirty days' notice, and thus, APS did not breach its contract with AALAS when it terminated the contract.  Finally, Defendants aver that Dr. Reich cannot be liable for tortious interference with contractual relations because she is not a "stranger" to AALAS' contract with APS.

Plaintiff Sam responds that Defendant APS breached its employment contract with him because his transfer to A.D. Williams was a demotion.  Next, Plaintiffs argue that Defendants are liable for breach of the AALAS contract because neither Defendant Reich nor Dorsey Hopson had the authority to cancel the contract between the Atlanta Board of Education and AALAS.  Finally, they contend that Dr. Reich can be liable for tortious interference because she acted with malice with respect to Plaintiff Sam and his colleague, Colleen McCarthy.

### 3. Breach of Employment Contract

6

AO 72A
(Rev.8/82)

The court has reviewed Plaintiffs' complaint and response to Defendants' motion for summary judgment. Although difficult to understand, the court believes that Plaintiff Sam contends he was constructively discharged when he was transferred from Jackson Elementary School to A.D. Williams Elementary School, and this discharge somehow breached his employment contract.

As an initial matter, the court cannot discern how Plaintiff Sam's transfer, itself, breached his employment contract. Plaintiff Sam signed an employment contract with APS for the 2001-2002 school year. The contract provides that APS may reassign a teacher during the term of the contract. *See* Sam Aff. attaching Contract of Employment, ¶ 6 (REASSIGNMENT: the "Board reserves the right during the term of this contract to make reassignments, as may be deemed appropriate, to any other positions within APS, consistent with provisions of applicable law or this contract."). Plaintiff Sam has proffered no evidence to show his reassignment to A.D. Williams was not a proper application of this provision.

Alternatively, with his constructive discharge argument, Plaintiff Sam appears to contend that his transfer was, in effect, a termination. Plaintiff Sam's contract provides that "[t]his contract shall not be terminated by the Board except as provided for in any law of the State of Georgia presently in force or hereafter enacted pertaining to the retention and/or dismissal of employees of local boards of education." *Id.*, ¶ 7. Plaintiff Sam has not pointed to any law of the State of Georgia that this "termination" purported violates.

In any event, to show constructive discharge, a plaintiff must demonstrate that "working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign." *See Durley v. APAC, Inc.*, 236 F.3d 651 (11th Cir. 2000). In constructive discharge, the plaintiff's subjective feelings about his employer's actions are not considered. *See*, *e.g.*, *Doe v. DeKalb County School Dist.*, 145 F.3d 1441, 1450-51 (11th Cir. 1998). Therefore, the fact that Plaintiff Sam clearly does not prefer the atmosphere at A.D. Williams to Jackson Elementary is of no moment in his constructive discharge claim. It is undisputed that Plaintiff Sam suffered no loss of pay or benefits when he was reassigned to A.D. Williams School. Furthermore, even accepting Plaintiff Sam's description of the conditions at A.D. Williams Elementary School, the court finds that no reasonable jury could conclude that those conditions were so intolerable that Plaintiff Sam was forced to resign. Significantly, Plaintiff Sam proffered no evidence to show that he was treated differently than any other teacher at A.D. Williams, and the court presumes that A.D. Williams has a roster of teachers that continue to be employed there.

The gravamen of Plaintiff Sam's position seems to be that Dr. Reich was hostile and abusive toward him and unreasonable in her demands. The record makes it clear that the two had a poor professional working relationship. However, it is not for this court to decide who was "in the wrong" in creating that poor relationship. Plaintiff Sam's teaching contract makes no provision for requiring that Dr. Reich prove that she was correct in supervising Plaintiff Sam in the manner she did. In the end, the relationship between the two was irreparable, and

Dr. Darcy made the decision to transfer Plaintiff Sam. Under the terms of Plaintiff Sam's contract, Dr. Darcy had that option. The notion that Dr. Reich was an abusive supervisor permeates the remainder of Plaintiffs' claims, however, the court need not take a position on that characterization because Plaintiffs' claims fail for other reasons.

### 4. Breach of AALAS Contract

In his deposition, Plaintiff Sam testified that APS breached its AALAS contract because the contract states that it could be terminated for any reason, but APS did not give a reason when it terminated the contract. The parties, however, did not bargain and agree to a provision in the contract that the termination notice would have to specify a reason for termination. The contract only specifies that either party may terminate the contract for any reason. Plaintiff Sam also testified that APS breached the contract because the term of the contract was for one year and the termination occurred prior to the end of the year. This argument simply ignores the termination provision in the contract.

In their response to Defendants' motion for summary judgment, Plaintiffs now contend that "neither Defendant Reich nor Dorsey Hopson had the legal authority to cancel the contract between the Atlanta Board of Education and AALAS." Response, at 5. "To date, the Defendants have failed to provide any evidence indicating that the Atlanta Board of Education or a legally empowered designee decided to terminate AALAS's contract. Absent authority, the thirty-day notification is invalid and amounts to further evidence of harassment." *Id.* It is difficult for the court to construe Plaintiffs' meaning here. It is undisputed that Dorsey

9

Hopson sent Plaintiff Sam a letter on January 14, 2002, notifying him that APS was terminating its contract with AALAS. As counsel for APS, surely Mr. Hopson has the authority to make that notification, and APS surely has ratified that notification through the course of this litigation. Plaintiffs have simply proffered no evidence that Mr. Hopson was acting outside of his authority when writing that letter or that his actions were contrary to the wishes of the APS.

Finally, Plaintiffs contend that Defendants violated their obligation of good faith and fair dealing inherent in the contract because they relied on the opinion of Dr. Reich whose motive was to eliminate Plaintiff Sam and Colleen McCarthy from Jackson Elementary School. Response, at 6. However, if a party takes actions that are expressly permitted under the contract, it cannot be liable for a breach of the implied duty of good faith and fair dealing. *See Marathon U.S. Realties, Inc. v. Kalb*, 244 Ga. 390 (1979). Termination for any reason was expressly permitted in the contract, and thus, APS did not breach its implied duty of good faith and fair dealing in terminating the contract with AALAS.

### 5. Tortious Interference with Contractual Relations

Plaintiffs contend that Dr. Reich is liable for tortious interference with contractual relations in convincing APS to terminate its after-school services contract with AALAS. In Georgia, to establish a claim of tortious interference with contractual relations, a plaintiff must show "the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business

10

relationship with the plaintiff, thereby causing the plaintiff financial injury." *Atlanta Market Center Management Co. v. McLane*, 269 Ga. 604, 608 (1998).  A plaintiff must demonstrate that the defendant is a "stranger" to the "contract at issue and the business relationship giving rise to and underpinning the contract."  *Id.* at 610; *see also La Sonde v. Chase Mortgage Co.*, 259 Ga. App. 772 (2003) (where buyer filed suit against seller and mortgage company alleging mortgage company interfered with buyer's contractual relationship with seller to purchase his house, court held that "person with a direct economic interest in the contract is not stranger to the contract"); *Culpepper v. Thompson*, 254 Ga. App. 569, 571-72 (2002) ("Privilege means a legitimate or bona fide economic interest of the defendant or a legitimate relationship of the defendant with the contract, which causes the defendant not to be considered a stranger, interloper, or meddler to the contract").[1]

---

[1]Contrary to Plaintiffs' assertions, therefore, the law does not require either a stranger or an act of malice.  If Plaintiffs cannot show that Dr. Reich was a stranger to their contract, they cannot succeed on their claim for tortious interference with contractual relations, despite their allegation that Dr. Reich was "feuding" with Plaintiff Sam and Ms. McCarthy and sought to terminate the contract as a form of retaliation.  Plaintiffs misread *Disaster Services, Inc. v. ERC Partnership*, 228 Ga. App. 739 (1997).  There, the court analyzed the facts presented and concluded that the defendant was not a "stranger" to the contract.  *Id.* at 741.  The court further stated that the defendant's actions were not "tortious, wrongful or improper action" because such action has to be "wrongful in itself" and therefore generally "involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions."  *Id.* at 741-42.  The court then concluded that the defendant showed that "under all theories of liability," its conduct "was, not only proper, but privileged."  *Id.* at 742.  Thus, the court discussed elements of the plaintiff's claim seriatim, but did not conclude that they were alternative.

Here, it is clear that Dr. Reich is not a stranger to the AALAS contract. She gave initial approval to the contract and had the power to recommend its termination. Dr. Dancy testified that a principal could make the decision to terminate an after school program. *See* Dancy Depo., at 231-32. She further stated that the "principal's approval [is] required as part of the process if the [after-school] program is going to be on school grounds." *Id.* "The principals always have ultimately the last word as to what is implemented or carried out in a particular school." *Id.* Plaintiffs provide no evidence to dispute this testimony. Because Plaintiffs cannot show that Dr. Reich was a stranger to the AALAS contract, their tortious interference claim fails.

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment as to all of Plaintiffs' remaining claims.

### B.   Motion to Stay Consideration of Summary Judgment

On June 15, 2005, Plaintiffs filed their opposition to Defendants' motion for summary judgment. In that response, Plaintiffs "note that they have not completed discovery as they have been denied the opportunity to depose Ms. Augustine and Mr. Hopson." Response, at 1. Nearly one month later, on July 14, 2005, Plaintiffs filed their motion to stay apparently pursuant to Federal Rule of Civil Procedure 56(f). Plaintiffs, however, did not comply with the procedural requirements of Rule 56(f). Plaintiffs' Rule 56(f) motion was not filed with their response to Defendants' motion for summary judgment, but rather one month later. Furthermore, to support a Rule 56(f) motion, a plaintiff must provide an affidavit setting forth

with particularity those facts that he expects to discover and how those facts would create a genuine issue of material fact precluding summary judgment.  *See Harbert International, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998).  Plaintiffs filed no such affidavits.

In any event, Plaintiffs contend that the testimony of Kathy Augustine is critical to their case because she was consulted on several occasions regarding the actions taken against Plaintiffs and Colleen McCarthy.[2]  Plaintiffs also aver that Ms. Augustine was involved in the grievance process regarding Plaintiff Sam's concerns about the management at Jackson Elementary School.  Accepting all of these allegations as true, they are not relevant to the motion for summary judgment filed by Defendants.  In particular, Plaintiff Sam's difficulty with the grievance process is not the basis of his breach of contract claim against APS.  Significantly, the court has already dismissed Plaintiff's retaliation and due process claims.  Furthermore, Plaintiff Sam's contentions that it was Dr. Reich's fault that the two had a difficult professional relationship are also irrelevant to his breach of contract claim.  Thus, Ms. Augustine's testimony is not necessary for the court to rule on Defendants' motion for summary judgment, and the court DENIES Plaintiffs' motion to stay [118-1].  For the same reason, the court DENIES AS MOOT Plaintiffs' motion to compel the deposition of Kathy Augustine [113-1].

C.   **Motion to Disqualify**

---

[2] The court GRANTS Plaintiffs' motion for leave to file supplemental brief [122-1].

Plaintiffs request that the court disqualify Dorsey Hopson, Assistant General Counsel for APS, because he was a witness to critical events that led to this litigation. Plaintiffs argue that "Mr. Hopson has acted as a witness and investigator of events leading to Plaintiff Sam's constructive discharge from his tenured position and the events leading to the cancellation of Plaintiff AALAS's contract to provide after school services." *See* Motion, at 2. Plaintiff also alleges that Mr. Hopson terminated APS' contract with AALAS without authority or approval from the Board of Education. Finally, Plaintiffs request that all attorneys for the APS be barred from representing Dr. Reich because of potential conflicts of interest with her.

Discovery began in this case in March 2004. Plaintiffs filed the instant motion for disqualification in April 2005. Mr. Hopson was not initially listed as a witness by Plaintiffs, although at least 60 other individuals, including Kathy Augustine, Dr. Dancy and Dr. Reich, were. (In fact, it was not until a month after Plaintiffs filed the instant motion to disqualify that they amended their initial disclosures on May 7, 2005 to add Mr. Hopson as a witness.) Plaintiffs' counsel indicated to Defendants' counsel in January 2005 that he believed Mr. Hopson to be a potential fact witness but did not seek disqualification until April 2005. Moreover, Plaintiff Sam was aware of the involvement of Mr. Hopson in his situation as it was unfolding. Based on these circumstances, the court finds that Plaintiffs' motion is not timely. On this basis alone, the court would deny Plaintiffs' motion to disqualify Mr. Hopson. *See Glover v. Libman*, 578 F. Supp. 748, 767 (N.D. Ga. 1983) (Forrester, J.) (noting that because motion to disqualify is equitable in nature, it should be "filed at the onset of litigation" or

14

"with promptness and reasonable diligence once the facts" upon which the motion is based become known) (quotations and citations omitted).

Furthermore, Plaintiffs contend that Mr. Hopson is an important fact witness because he "is the only [APS] official who appears to have investigated the issues of harassment and retaliation raised by Mr. Sam." *See* Motion, at 2. As the court pointed about above, however, Plaintiffs have no claim of harassment, retaliation, or due process, and such issues are irrelevant to Plaintiffs' breach of contract or tortious interference claims. In their motion, Plaintiffs also refer to some improper taking of AALAS files and materials when AALAS was asked to leave Jackson Elementary School. The court makes no reference to this allegation because Plaintiffs did not raise it in their complaint. Plaintiffs also aver that Mr. Hopson's involvement in writing the January 14, 2002 termination letter renders him a fact witness with respect to AALAS's breach of contract claim. As discussed above, however, Mr. Hopson's letter notifying AALAS of the termination is irrelevant to Plaintiff AALAS's breach of contract claim, and the court finds no need to depose him on this matter. Finally, Plaintiffs contend that Mr. Hopson had some involvement with claims made by Plaintiff Sam relating to medical issues. Again, this is not relevant to whether Defendant APS or Defendant Reich is liable to Plaintiffs on state law contract and tortious interference claims. Because Mr. Hopson has no information relevant to Plaintiffs' remaining claims, the court grants Defendants' motion for a protective order [85-1] precluding his deposition. For the same

15

reason, the court need not reach the issue of whether Mr. Hopson's involvement in the litigation is protected by the attorney-client privilege.

Plaintiffs request that no APS attorney be permitted to represent Dr. Reich because Dr. Reich has a reputation for retaliating against those who dissent from her viewpoints. Further, they claim, teachers who are witnesses to Plaintiffs' suit fear that Dr. Reich will retaliate against them. Plaintiffs argue that if such a teacher came to Mr. Hopson to complain of retaliation, he would not be able to report such conduct to his superiors because he represents Dr. Reich. It is not surprising that Plaintiffs have provided no case law to support this notion of conflict of interest. The court rejects Plaintiffs' argument. Finally, Plaintiffs contend that Mr. Hopson has a conflict of interest because Dr. Reich has admitted that she falsified documents to justify extra payment to certain staff members at Jackson Elementary. Again, this is irrelevant to Plaintiffs' contract-related claims and does not need to be considered by the court. For the foregoing reasons, the court DENIES Plaintiffs' motion to disqualify attorney Dorsey Hopson [58-1].

### III. Conclusion

The court DENIES Plaintiffs' motion to disqualify attorney Dorsey Hopson [58-1]; GRANTS Defendants' motion for a protective order [85-1]; GRANTS Defendants' motion for summary judgment [90-1]; DENIES AS MOOT Plaintiffs' motion to compel deposition of Kathy Augustine [113-1]; DENIES Plaintiffs' motion to stay consideration of Defendants'

motion for summary judgment [118-1]; and GRANTS Plaintiffs' motion for leave to file supplemental brief [122-1].

The Clerk of the Court is DIRECTED to DISMISS WITH PREJUDICE Plaintiffs' complaint.

**IT IS SO ORDERED** this 9th day of February 2006.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE